UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| RICCARDO C. GREEN, | | |
| | Plaintiff, | No.  C05-129Z |
| v. | | |
| NORTH SEATTLE COMMUNITY COLLEGE, | | ORDER |
| | Defendant. | |

This matter comes before the Court on Defendant North Seattle Community College's ("Defendant" or "NSCC") motion for summary judgment as to each of Plaintiff Riccardo Green's ("Plaintiff") claims.  Docket no. 34.  Plaintiff has filed a brief in opposition to the motion and two separate motions to strike the Defendant's declarations.  Docket nos. 77, 80, 81.  Plaintiff has also filed a belated motion to file an over-length brief and a motion to amend defective declarations.  Docket nos. 65, 79.[1]  In its reply, Defendant also moves to strike Plaintiff's declaration.  Docket no. 75.  Having reviewed the briefing and supporting declarations, the Court now enters the following Order.

---

[1] Defendant has not filed an opposition to Plaintiff's request for an over-length brief. Plaintiff's motion is GRANTED.

ORDER   -1-

1    ## BACKGROUND

2    Acting pro se, Plaintiff brings the following claims against Defendant: (1) retaliation

3    in the form of being replaced as an instructor; (2) racial discrimination in pay; (3) disparate

4    treatment; (4) retaliation for complaining about racial treatment; and (5) breach of contract.

5    Amend. Compl., docket no. 11, at ¶¶ 3.9-6.7.  Plaintiff began working as a Continuing

6    Education ("CE") instructor at NSCC in summer quarter 2001.  Amend. Compl. ¶ 3.1;

7    Bittenbender Decl., docket no. 35, at Ex. 6.  NSCC hires CE instructors on a part-time basis

8    for not longer than one academic quarter at a time.  Bittenbender Decl., at ¶ 5.  CE

9    instructors are not members of the faculty union and are not covered by most of the state

10   higher education rules or college district policies.  Id.  Plaintiff's claims arise out of a series

11   of events that occurred between the winter and fall academic quarters of 2004.  Amend.

12   Compl. ¶¶ 3.1-3.9.  Plaintiff alleges that he was discriminated against based upon his race

13   by: (1) being asked to take on work-related duties that a fellow instructor, who is Caucasian,

14   was not asked to perform; (2) receiving lower pay than Caucasian instructors; and (3) being

15   replaced by a Caucasian instructor for the summer quarter 2004 tai chi class.  Plaintiff also

16   claims that he was retaliated against for complaining about this alleged discrimination.

17   Amend. Compl. ¶ 3.7.  Finally, Plaintiff appears to claim that Defendant breached an

18   employment contract to which he was a party.  Id. ¶ 6.5-6.7.

19   Increased Work Duties

20   In winter quarter 2004, which ran from January 5 through March 24, Plaintiff taught a

21   tai chi class at the NSCC Wellness Center.  Bittenbender Decl., at Ex. 4 (2003-2004

22   academic calendar).  Plaintiff's class, along with another fitness class taught by a Caucasian

23   instructor, was scheduled for Saturday mornings at 9:00 a.m.  Because the building did not

24   regularly open until 10:00 a.m. on Saturdays, Plaintiff was asked to press a button near the

25   entrance to the Wellness Center, which alerted campus security that he, his students, the

26   other instructor, and her students wished to enter the building for the 9:00 a.m. classes.

1   Rocke Decl., docket no. 36, Ex. 3 (Green Dep. at 67-69).  Plaintiff was also asked to stand

2   by the door once it was open and let students in as they arrived, but he did not do so because

3   he felt the task was the NSCC's responsibility.  Id. (Green Dep. at 127).  Plaintiff was asked

4   to take on these tasks—calling security and opening the door for arriving students—in a

5   phone message from Kendall Harris ("Harris"), a NSCC administrator.  Id. (Green Dep. at

6   67-68).  Plaintiff responded by leaving a message with Harris that he did not want to be

7   responsible for making sure the door was open for students because it was not part of his

8   teaching duties.  Id.  Plaintiff did not suggest to anyone at NSCC that the responsibilities he

9   was assigned involving letting students into the Wellness Center were the result of race

10  discrimination until he filed a claim with the EEOC and the Washington State Human Rights

11  Commission on August 10, 2004.  Rocke Decl., Ex. 1.

12  CE Instructor Pay

13          Plaintiff claims that he was discriminated against based on his race because he was

14  paid less than Caucasian instructors.  In his deposition, Plaintiff stated that he believed he

15  was paid $20 per hour when he started working at NSCC and received raises to $30 per hour.

16  Rocke Decl., Ex. 3 (Green Dep. at 143).  Defendant's pay records indicate that Plaintiff was

17  paid $25 per hour as of summer 2001 and $30 per hour thereafter.  Bittenbender Decl., Ex. 6.

18  At his deposition, Plaintiff stated that he does not know what other instructors at NSCC were

19  paid.  Rocke Decl., Ex. 3 (Green Dep. at 143).  Defendant states that CE instructors are

20  generally paid on an hourly basis unless they teach a class that lasts no more than three

21  sessions or meets at an outside facility, in which case they may be paid on a percentage

22  basis.  Bittenbender Decl., ¶ 5.  Defendant also submits a pay table indicating that, at $30 per

23  hour, Green was paid as much as or more than every other martial arts instructor.  Id., at Ex.

24  6.

25

26

1    <u>Summer 2004 Tai Chi Class</u>

2          For spring quarter 2004, Plaintiff was scheduled to teach a tai chi class beginning on

3    April 17, 2004.  <u>Id.</u>, Ex. 4.  On Friday, April 16, 2004, Plaintiff called NSCC to inform them

4    that he would "not be available for Saturday morning tai chi class."  Rocke Decl., Ex. 3

5    (Green Dep. at 110); Bittenbender Decl., at ¶ 13.  When asked at his deposition why he

6    cancelled his tai chi class for spring 2004, Plaintiff responded as follows:

7          Well, I did not know if the class was going to be held or not due to the low
           enrollment or any enrollment because I wasn't notified ahead of time.  And I
8          was working at the time.  And this other job that I had had the ability to offer
           me hours to work for that quarter.  And so I went ahead and cancelled the
9          class.

10   Rocke Decl., Ex. 3 (Green Dep. at 115).  Plaintiff stated that the other work that was

11   available at the same time as the tai chi class paid more than his wages for teaching at NSCC.

12   <u>Id.</u> (Green Dep. at 118).  Defendant was able to find a replacement for Plaintiff, Dennis

13   Sharp ("Sharp"), who taught the spring quarter 2004 tai chi class in Plaintiff's place.  <u>Id.</u>  In

14   his brief, Plaintiff states that he "admits Plaintiff had thoughts of cancelling due to other

15   opportunities and life style changes, but was not sure."  Pl.'s Opp. Br., docket no. 77, at 9.

16         For summer quarter 2004, Plaintiff was originally listed as the instructor for the sole

17   tai chi class offered that quarter.  Green Decl., docket no. 60, at 618.  However, some time

18   after Plaintiff cancelled his spring 2004 tai chi class, NSCC replaced Plaintiff as the

19   instructor for the summer class with Sharp, who is Caucasian.  <u>Id.</u>, at 645; Bittenbender

20   Decl., Ex. 6.  When Plaintiff became aware that he had been replaced, the following email

21   exchange occurred between Plaintiff and Harris of NSCC:

22         **Plaintiff:** WHY WAS I REPLACED BY D. SHARP FOR THE TAI CHI
           CLASSES TAUGHT ON THE WEEKENDS[?]  I HAVE BEEN TEACHING
23         THIS CLASS FOR THE PAST THREE TO FOUR YEARS! I CANCELLED
           DUE TO ABRUPT SCHEDULE IN MY LIVE [sic] THAT CHANGED THIS
24         QUARTER SPRING 2004. I WAS AUTHORIZED TO TEACH THIS
           SUMMER QUARTER 2004 – TAI CHI CLASS. HOW MUCH
25         NOTIFICATION SHOULD I HAVE GIVEN PRIOR TOO [sic] SPRING 2004
           TAI CHI CLASS[?]  I DID NOT AUTHORIZE CANCELLATION FOR TAI
26         CHI CLASS FOR SUMMER 2004!!! I APPRECIATE AN ANSWER!!!

ORDER  -4-

**Harris:** Mr. Green, We received your call late in the afternoon of April 16th informing us that your work schedule had changed and you would not be able to teach on Saturday mornings. Your class, Beginning Tai Chi, scheduled for April 17th was postponed for one week. Our staff called all 19 registered students to inform them of the change. We immediately began a search for a replacement instructor available to teach the Saturday morning class at the last minute. D. Sharp (a Tai Chi instructor with Continuing Education for the past three years) graciously agreed to teach the class and we were able to hold our first session the following week. Since we did not hear back from you telling us you were now available for Saturday mornings, we developed our summer schedule using Mr. Sharp's proposed modification of the Tai Chi class. We were very grateful for his help in retaining the 19 students and providing an enjoyable class. We made the changes to the course description and scheduled the class Beginning Tai Chi (Grasping and Sparrow's Tail) on Saturdays from 9:00-10:30 a.m. The Continuing Education staff evaluates the variety of classes each quarter to determine the classes, times, locations and instructors to best present a program that will serve the needs of our students. We are constantly changing our offerings to reflect student demand and successful instructors.

**Plaintiff:** Kendall, did I cancel for summer quarter 2004 to instruct tai chi class?

**Harris:** Riccardo, You informed us on April 16th that your schedule had changed and you were unable to work on Saturday mornings. We were completing the final changes for the summer print schedule the week of April 18-23. Since you did not contact Melissa Heneghan to let her know you were able to teach on Saturdays, you were not assigned a Saturday morning class.

Green Decl., at 1071. In his opposition brief, Plaintiff states that he "objects to Defendant's assertion that the only instructor to instruct for summer 2004 was the instructor who substituted for Plaintiff in Spring Quarter 2004 is absolutely false." Pl.'s Opp. Br., at 16. Plaintiff does not state how or why Defendant's assertion that Sharp was the only summer 2004 tai chi instructor is false.[2]

End of Employment in Fall Quarter 2004

In his deposition, Plaintiff repeatedly stated that he resigned from teaching at NSCC before fall quarter 2004. Rocke Decl., Ex. 3 (Green Dep. at 92 ("I quit teaching, instructing my self-defense class due to the fact of how everything was going."); 96 ("I cancelled for the

---

[2] The Court also notes that even if Defendant's statement that there was only one tai chi instructor for summer quarter 2004 was "false," as Plaintiff suggests, it would have no effect on this Court's ruling because it does not aid in establishing discriminatory intent.

fall of 2004 because of the—after I was told that there's no students for the summer quarter

of self-defense class all of a sudden, which was unusual."); 99 ("Then they offered [self-

defense] for the fall and, that's when I already said no, I'm putting my two weeks notice in.

I cancelled it.  I don't want to teach self-defense starting the fall of 2004, yeah."); 139 ("I did

indicate to Mr. Kendall Harris that I resigned from the college.")).  However, in his brief,

Plaintiff states that he was forced to resign.  Pl.'s Opp., at 11.  In his declaration, Plaintiff

submits a July 29, 2004, email, which provides the following exchange:

> **Plaintiff:** To confirm, my employment with North Seattle cc is terminated?
> **Harris:** We do not have any scheduled classes for you in the Fall 2004 quarter.
> **Plaintiff:** Why am I not being able to offer self defense for fall 2004?
> **Harris:** We have decided not to offer the class for Fall quarter.

Green Decl., at 1075.  Despite his deposition statements about resigning, Plaintiff states that

after his deposition he "recollected via memory, instead Plaintiff was forced to resign."  Pl.'s

Opp. Br., at 14 (citing Green Decl., at 1075).

Defendant also suggests that Plaintiff resigned because he was without transportation.

In his deposition, Plaintiff stated that he resigned from similar teaching positions at Shoreline

Community College and Bellevue Community College in fall 2004 because his car was

totaled on September 14, 2004.  Rocke Decl., Ex. 3 (Green Dep. at 30, 44, 47).  In response,

Plaintiff states that he "never resigned from the employment in Fall 2004 because of the hit

and run car accident in front of my place of residence . . . ."  Pl.'s Opp. Br., at 10.

Plaintiff's Race Discrimination Allegations

Plaintiff described his racial classification in his deposition as "a quarter African-

American, Jamaican, Filipino, some Hispanic/Spanish background and also Mongolian."

Rocke Decl., Ex. 3 (Green Dep. at 8).  Plaintiff stated he does not know which racial

category is the basis for his allegation that he was discriminated against and further stated "I

haven't heard or been told any racial derogatory words as of yet or any hate crimes or any

threats that are race related."  Id. (Green Dep. at 148-49).  When asked why he believes he

1   was singled out based on his race, Plaintiff responded: "Well, the first one is that I

2   definitely requested these extra duties that the other instructor who's a female who's

3   Caucasian was not.  I was also asked on top of that including myself and the security guard

4   who is African-American of those duties.  The next one is also my wage."  Id. (Green Dep.

5   at 150).  Plaintiff concedes that he did not make any complaint to Defendants regarding

6   racial discrimination until he filed a claim with the EEOC on August 10, 2004, which was

7   forwarded to the Washington State Human Rights Commission.  Pl.'s Opp., at 11; Green

8   Decl., at 105.  Plaintiff was asked whether, when he complained about his "extra duties," he

9   alleged discrimination by NSCC.  Rocke Decl., Ex. 3 (Green Dep. at 177).  Plaintiff

10  responded only by stating: "I know it was close to Martin Luther King Day.  And I indicated

11  to them that I did not appreciate it and I wish it would stop.  And they replaced me with a

12  Caucasian instructor.  I mean the paper evidence stands."  Id.

13  Motions to Strike

14      Plaintiff has filed what are ostensibly motions to strike both the Bittenbender

15  declaration and the Rocke declaration.  Docket nos. 80, 81.  However, Plaintiff's

16  "objections" to these declarations are without merit.  For example, Plaintiff repeatedly states

17  that the exhibits contained in the declarations are "subject to great scrutinization [sic] and

18  speculation in that information could have been altered.  Therefore, no date, signature, and

19  so forth indicated.  Exhibit information could have been altered, revised, rescinded, deleted,

20  omitted, and changed in any way to create a legal defense in this case."  Mot. to Strike,

21  docket no. 80, ¶¶ 5, 8, 11, 14, 17.  Plaintiff also repeatedly objects that he has not "agreed to,

22  signed to, acknowledge [sic] to this form in its entirety."  Id. ¶¶ 3, 6, 9, 12, 15.  Finally,

23  Plaintiff argues that the excerpts from his deposition are "inflammed [sic] and not authentic

24  documentary admissible evidence," that "Defendant attempts to defraud" the Court, and that

25  "Defendant['s] materials and exhibits are nullified, terminated, and squashed."  Docket no.

26

ORDER  -7-

1  81, ¶¶ 3, 6, 7.  A review of the declarations in question reveals that they are made with

2  personal knowledge and signed under oath.  Plaintiff's motions are DENIED.

3      In its reply, Defendant moves to strike Plaintiff's declaration because it is "unsworn,

4  unsigned, and un-notarized."  Docket no. 75.  Plaintiff did sign the certificate of service page

5  of his brief and declaration, and he subsequently filed a signed copy of his brief.  Plaintiff

6  has also filed a "motion to amend" the declaration supporting his opposition to Defendant's

7  summary judgment motion, which is found at docket no. 60.  Docket no. 79.  Given that

8  Plaintiff is a pro se litigant, the Court DENIES Defendant's motion to strike.  Plaintiff's

9  motion to amend his declaration is GRANTED and the Court considers Plaintiff's

10  declarations properly signed for purposes of this motion.

11  ## DISCUSSION

12      Summary judgment is appropriate where there is no genuine issue of material fact and

13  the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The

14  moving party bears the initial burden of demonstrating the absence of a genuine issue of

15  material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party

16  has met this burden, the opposing party must show that there is a genuine issue of fact for

17  trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The

18  opposing party must present significant and probative evidence to support its claim or

19  defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir.

20  1991).  For purposes of this motion, reasonable doubts as to the existence of material facts

21  are resolved against the moving parties and inferences are drawn in the light most favorable

22  to the opposing party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

23  ### I.    Discrimination Claims

24      Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, which provides

25  that "it shall be an unlawful employment practice for an employer . . . to discriminate against

26  any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin." 42

U.S.C. § 2000e-2(a)(1). In <u>Vasquez v. County of Los Angeles</u>, the Ninth Circuit succinctly

described the burden shifting process of a Title VII claim as follows:

> In order to prevail in a Title VII case, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.
>
> For a prima facie case, [the plaintiff] must offer evidence that gives rise to an inference of unlawful discrimination, either through the framework set forth in <u>McDonnell Douglas Corp. v. Green</u> or with direct or circumstantial evidence of discriminatory intent. Under <u>McDonnell Douglas</u>, unlawful discrimination is presumed if the plaintiff can show that (1) [he] belongs to a protected class, (2) [he] was performing according to [his] employer's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) other employees with qualifications similar to [his] own were treated more favorably. 411 U.S. 792, 802 (1973).

349 F.3d 634, 640 n.5 (9th Cir. 2003).

### A.    Prima Facie Case

Plaintiff appears to allege that Defendant engaged in discriminatory conduct toward

him in three ways: (1) asking him to let students into the Wellness Center for Saturday

classes in January 2004 while not asking the Caucasian professor to perform the same task;

(2) paying him less than other professors and/or not offering him the option of being paid on

a percentage basis rather than hourly; and (3) cancelling his summer quarter 2004 tai chi

class and replacing him with Sharp.[3] Plaintiff does not provide any direct or circumstantial

evidence that anyone working at NSCC acted with discriminatory intent. Plaintiff stated: "I

haven't heard or been told any racial derogatory words as of yet or any hate crimes or any

threats that are race related." <u>Id.</u> (Green Dep. at 148-49). Plaintiff appears to rely only on

---

[3] Although it is neither clear from the Complaint nor the opposition brief, Plaintiff may also be arguing that he was discriminated against by being removed or constructively discharged from teaching at NSCC, as well as alleging that such action forms the basis for his retaliation claim. In any event, the Court concludes that the Plaintiff has not raised material issues of fact as to whether Defendant's legitimate, non-discriminatory reason for such action was a pretext for racial discrimination.

the fact that he is of mixed-race descent and he allegedly suffered adverse employment action while working at NSCC. Thus, to survive summary judgment, Plaintiff must first establish that there are genuine issues of material fact as to the McDonnell Douglas four-part test.

The four McDonnell Douglas elements are: (1) Plaintiff belongs to a protected class; (2) Plaintiff was performing according to his employer's legitimate expectations; (3) Plaintiff suffered an adverse employment action; and (4) other employees with qualifications similar to Plaintiff's own were treated more favorably. 411 U.S. at 802. First, there is no dispute that Plaintiff is a member of a protected class based on his racial heritage. There is also no argument by Defendant that Plaintiff was not performing according to their expectations when he was teaching. Thus, the disputed McDonnell Douglas elements are whether Plaintiff suffered adverse employment action and whether other employees were treated more favorably.

## 1.    Extra Employment Duties

Defendant argues that being asked to open the door early to let students into the Wellness Center cannot constitute "adverse employment action" because it was an insignificant task, was merely a request that was abandoned when Plaintiff stated he did not wish to be responsible for the task, and was not actually performed as requested. Defendant is correct. The task only involved pressing a button to alert campus security that Plaintiff, his students, and others wished to be let into the building and making sure that arriving students were able to enter. Moreover, Plaintiff did not actually engage in much of what he complains was his assigned "extra duty." Rocke Decl., Ex. 3 (Green Dep. at 127). Simply being asked to perform a minor task, without actually having to carry out that task, is not an adverse action. Because Plaintiff cannot raise an issue of fact as to whether the "extra duty" he was assigned constitutes an adverse employment action, this portion of his claim must fail.

ORDER   -10-

## 2.    Plaintiff's Pay

Defendant states that, at $25-$30 per hour for 2001-2004, Plaintiff was paid equal to or more than other instructors teaching similar classes.  Defendant provides both a historical summary of pay records for instructors teaching "exercise" classes, as Plaintiff did, and includes the NSCC Instructor Pay policy.  Bittenbender Decl., Exs. 2, 6.  The Instructor Pay policy states that "[a]ll instructors will be offered an hourly pay rate for all contract hours of assigned classes."  Id.  For CE classes, the policy allows NSCC to "*elect* to pay the instructor based on a percentage of the final student tuition" under limited conditions, such as classes meeting for three or fewer sessions or classes in which the instructor provides the facilities. Id. (emphasis added).  Defendant states that these exceptions did not apply to Plaintiff's classes, which Plaintiff does not appear to dispute.

Plaintiff makes a largely incoherent argument that Defendant has not established that other instructors, specifically Dennis Sharp, were not paid more than him.  Pl.'s Opp. Br., at 12 ("the burden of proof is switched to the Defendant to prove that Mr. Dennis Sharp was not paid $30 beginning in 2001-2004 versus Plaintiff who was paid at $25 an hour"). Plaintiff also states that "yoga gets paid more or less than tai chi even though both disciplines are exercises – Plaintiff is very confused." Id.  Plaintiff also seems to complain that he was not given the option to be paid on a percentage basis.  Id., at 13 ("Plaintiff objects to Defendant's assertion that some instructors were paid on a percentage basis due to the fact that the instructor taught in a different location.").

Plaintiff misunderstands that it is his burden to first provide "significant and probative evidence" raising an issue of fact as to whether he suffered an adverse employment action in the form of lower pay.  See Intel Corp., 952 F.2d at 1558.  Plaintiff has not done so.  Indeed, the wage history provided by Defendant indicates that Plaintiff was paid $25 per hour in fall quarter 2001 and $30 per hour thereafter.  Bittenbender Decl., Ex. 6.  In contrast, the other tai chi instructors, Sharp and Blogg (who are Caucasian) were paid only $25 per hour

1  through 2004, with the exception of Sharp's pay of $30 per hour for the single class he took

2  over when Plaintiff cancelled.  Id.  Simply put, all the evidence before the Court indicates

3  that Plaintiff was paid more, not less, than similarly situated employees.  Accordingly, the

4  Plaintiff's "disparate pay" discrimination claim must fail as well.

### 3.   Replacing Plaintiff as an Instructor

6       Plaintiff argues that he suffered an adverse employment action because he was

7  replaced for the summer quarter 2004 tai chi class by Sharp after Plaintiff cancelled his

8  spring quarter 2004 tai chi class.  The fact that Plaintiff was replaced is undisputed.

9  Defendant argues that it has demonstrated that Plaintiff was not treated differently because of

10 his race because it offered only one tai chi class and neither Plaintiff nor another Caucasian

11 instructor was given the position.  However, the instructor who was given the position was

12 Caucasian.  Thus, Defendant's argument speaks to whether it had a legitimate,

13 nondiscriminatory reason for replacing Plaintiff, not whether Plaintiff can make out a prima

14 facie case under McDonnell Douglas.  It is undisputed that Plaintiff suffered an adverse

15 employment action (being replaced for the quarter) and that a similarly situated employee

16 was treated differently (Sharp was his replacement).  Thus, this portion of Plaintiff's claim

17 must proceed to the next step in the Title VII discrimination analysis.

### B.   Legitimate, Nondiscriminatory Reason for Defendant's Conduct

19      Based on the above analysis, the next question is whether Defendant has provided a

20 legitimate, nondiscriminatory reason for replacing Plaintiff with Sharp for the summer

21 quarter 2004 tai chi class.  See Vasquez, 349 F.3d at 640.  As indicated in the email

22 exchange between Plaintiff and Harris, NSCC stated that Plaintiff was replaced because: (1)

23 Plaintiff cancelled his spring quarter 2004 class at the last minute leaving NSCC in the

24 precarious position of having to notify 19 students that the class had been cancelled, as well

25 as having to find a replacement on short notice; and (2) the summer scheduling was

26 completed during the week of April 18-23, 2004, which was the week after Plaintiff

1   informed NSCC that he was unavailable for Saturday morning classes, meaning NSCC had

2   no reason to believe that Plaintiff was available for the Saturday morning classes in summer

3   quarter 2004.  Green Decl., at 1071.  The email by Harris also indicated that NSCC was

4   constantly changing its schedule to reflect "successful instructors," suggesting that Defendant

5   wished to reward Sharp for filling in at the last minute when Plaintiff cancelled.  Id.  Finally,

6   Plaintiff was not the only regular tai chi instructor who was not allotted a class for summer

7   quarter 2004.  NSCC also did not offer a class to Blogg, who is Caucasian.  Bittenbender

8   Decl., Ex. 6.  Based on these undisputed statements and actions, Defendant has established

9   legitimate, nondiscriminatory reasons for replacing Plaintiff as the sole tai chi instructor for

10  summer quarter 2004.

11              **C.    Plaintiff's Burden to Establish Pretext**

12          Given that Defendant has established legitimate, nondiscriminatory reasons for

13  replacing Plaintiff as the tai chi instructor for summer quarter 2004, the burden shifts back to

14  Plaintiff to raise an issue of fact as to whether Defendant's reasons are a pretext for

15  discrimination.  See Vasquez, 349 F.3d at 640.  Plaintiff completely fails in this regard.  In

16  his opposition brief, Plaintiff offers only an unfocused list of complaints regarding being

17  replaced.  He states that he has "been placed into a conspiracy regarding cancelling on late

18  notice as a reverse defense created by the Defendant" and that Defendant's actions were a

19  "pretense to get rid of Plaintiff from employment due to the fact that Plaintiff was referred to

20  another tai chi instructor position in Bellevue Pro Sports Club by management."  Pl.'s Opp.

21  Br., at 9.  Nowhere does Plaintiff explain what evidence establishes that NSCC

22  administrators were motivated by race-based considerations.  The mere fact that Plaintiff is

23  not Caucasian and the administration officials at NSCC are Caucasian is simply insufficient

24  to rebut Defendant's well-founded reasons for allotting the summer quarter position to Sharp

25  rather than Plaintiff.  Plaintiff's Title VII discrimination claims fail as a matter of law, and

26  Defendant's motion for summary judgment is GRANTED.

1

## II.   Retaliation Claim

2        Plaintiff claims that NSCC administrators retaliated against him by cancelling his fall

3   quarter 2004 self-defense course and, thereby, constructively discharged him as an instructor

4   at NSCC.  Title VII prohibits retaliation against an employee because the employee "has

5   opposed any practice made an unlawful employment practice by this subchapter, or because

6   he has made a charge, testified, assisted, or participated in any manner in an investigation,

7   proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  "To make out a

8   prima facie case of retaliation, an employee must show that: (1) he engaged in a protected

9   activity; (2) his employer subjected him to an adverse employment action; and (3) a causal

10  link exists between the protected activity and the adverse action."  Ray v. Henderson, 217

11  F.3d 1234, 1240 (9th Cir. 2000).  In Ray, the Ninth Circuit noted that both formal complaints

12  filed with the EEOC and informal complaints made to an employee's supervisor constitute

13  "protected activities" under the prima facie case analysis.  Id. at 1240 n.3.  However, the

14  protected activity must involve expressing some form of "concern about discrimination."

15  Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1412 (9th Cir. 1987).  As with a discrimination

16  claim, if the plaintiff adequately asserts a prima facie case for retaliation, "the burden shifts

17  to the defendant to articulate a legitimate nondiscriminatory reason for its decision."  Id. at

18  1240.  Finally, "the plaintiff bears the ultimate burden of demonstrating that the reason was

19  merely a pretext for a discriminatory motive."  Id.

20       In this case, Defendant argues that Plaintiff has failed to raise an issue of fact as to his

21  prima facie case of retaliation because he cannot demonstrate that he engaged in a protected

22  activity until he filed the EEOC/Washington State Human Rights Commission complaint on

23  August 10, 2004.  Defendant is correct.  Plaintiff has acknowledged that he did not make any

24  complaint to Defendants regarding racial discrimination until he filed his claim on August

25  10, 2004.  Pl.'s Opp., at 11 ("Plaintiff states in deposition that Plaintiff may have not stated

26  race to the Defendant"); Rocke Decl., Ex. 3 (Green Dep. at 177 (declining to say that he

1    alleged discrimination when he complained about his work situation to NSCC

2    administrators)); Green Decl., at 105 (copy of EEOC complaint).  Accordingly, any

3    retaliation claim must necessarily be based on events that occurred *after* August 10, 2004.

4            Plaintiff has provided no evidence that he suffered any adverse employment action

5    after August 10, 2004.  To the contrary, Plaintiff repeatedly stated in both his deposition and

6    briefing that he resigned from further teaching at NSCC.  And to the extent Plaintiff contends

7    that he was constructively discharged, Plaintiff cites only the email exchange between he and

8    Harris dated July 29-30, 2004.  Green Decl., at 1075 (with regard to Plaintiff's self-defense

9    class, Harris stated that "[w]e have decided not to offer the class for the Fall quarter" but did

10   not state that NSCC no longer wished to employ Plaintiff as a CE instructor).[4]  Plaintiff

11   cannot base a retaliation claim on actions that were allegedly undertaken by NSCC *before* he

12   made any complaint regarding racial discrimination.  Defendant's motion for summary

13   judgment as to Plaintiff's retaliation claims is GRANTED.

14           **III.     Breach of Contract Claims**

15           Plaintiff's Amended Complaint alleges a violation of 42 U.S.C. § 1981 and common

16   law breach of contract.  Amend. Comp. ¶¶ 6.5-6.7.  Defendant argues that the 42 U.S.C. §

17   1981 claim and breach of contract claim both fail because Plaintiff has sued only NSCC (a

18   non-person), rather than individuals employed by NSCC, meaning Plaintiff's claims are

19   barred by Eleventh Amendment sovereign immunity.  Plaintiff has offered no response to

20   these arguments in his opposition and no support for his claim that the Defendant breached

21   an existing employment contract.

22

23

24           [4] In <u>Kennedy v. Allied Mutual Insurance</u>, the Ninth Circuit held that "a party cannot
     create an issue of fact [on summary judgment] by an affidavit contradicting his prior deposition
25   testimony."  952 F.2d 262, 266 (9th Cir. 1991).  To the extent Plaintiff states that he now
     "recollects via memory" that he was actually discharged from teaching at NSCC, that testimony
26   may not be considered because it contradicts multiple statements in his deposition that he
     resigned by choice.  <u>See</u> Rocke Decl., Ex. 3 (Green Dep. at 92, 96, 99, 139); Pl.'s Opp. Br., at
     9, 11 (stating that he was forced to resign).

1    42 U.S.C. § 1981(a) provides: "All persons within the jurisdiction of the United States

2  shall have the same right in every State and Territory to make and enforce contracts, to sue,

3  be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the

4  security of persons and property as is enjoyed by white citizens, and shall be subject to like

5  punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

6  Defendant argues that Plaintiff's § 1981 claim fails because he brought this action only

7  against NSCC, rather than any individual employed by NSCC, and NSCC (as a state agency)

8  may rely on Eleventh Amendment sovereign immunity.  Defendant is correct.  See Doe v.

9  Lawrence, 131 F.3d 836, 839 (9th Cir. 1997) (concluding that state university is a "state

10  agency" for purposes of sovereign immunity analysis and holding that claim for past

11  contractual benefits against employer would be barred by sovereign immunity); Fed'n of

12  African Am. Contractors v. Oakland, 96 F.3d 1204, (9th Cir. 1996) (holding that § 1981 suits

13  are permissible against municipalities without stating that the same is true of state agencies).

14  Plaintiff's common law breach of contract claim is also barred by sovereign immunity.

15  Additionally, because Plaintiff has offered no opposition to Defendant's sovereign immunity

16  argument, the argument is presumed to have merit.  The Court GRANTS Defendant's motion

17  to dismiss Plaintiff's § 1981 and breach of contract claims.[5]

18  **CONCLUSION**

19    For the foregoing reasons, Defendant's motion for summary judgment, docket no. 34,

20  is GRANTED.  Plaintiff's amended motions to strike the Bittenbender declaration, docket

21  no. 80, and to strike the Rocke declaration, docket no. 81, are DENIED.  Defendant's motion

22  to strike Plaintiff's declaration, docket no. 75, is DENIED.  Plaintiff's motion to file an over-

23

24

25    [5] Defendant raises the alternative argument that, regardless of the other issues, Plaintiff's
26  Amended Complaint must be dismissed without prejudice for insufficient service of process
   under FED. R. CIV. P. 12(b)(4).  Because the Court grants Defendant's motion for summary
   judgment, the insufficiency of service of process issue is moot.

ORDER   -16-

1    length brief, docket no. 65, is GRANTED.  Finally, Plaintiff's motion to amend his

2    declarations, docket no. 79, is GRANTED.  The Clerk is directed to enter judgment

3    dismissing this case with prejudice.

4            IT IS SO ORDERED.

5            DATED this 3rd day of May, 2006.

6

7

8                                         Thomas S. Zilly
                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   -17-